Case number 20-6118 Wendi Thomas v. City of Memphis, TN, et al. Oral argument is not to exceed 15 minutes per side. Mr. McAdoo for the appellant. Good morning, Mr. McAdoo. You may proceed. Thank you, your honor. May it please the court and good morning. My name is Paul McAdoo. I represent the appellant in this case, Wendi Thomas. With court's permission, I'd like to reserve three minutes of my time for rebuttal. Very well. Thank you. The case, Ms. Thomas brought a case last year against the City of Memphis for its repeated refusal to add her to a media advisory. Mr. McAdoo, could you could you keep your voice up some, please? I'm having difficulty hearing you. Yes, your honor, and I'll move a little closer in the hopes as well. This case was filed last year against the City of Memphis for its repeated refusal to add Ms. Thomas, an award-winning journalist based in Memphis, to their media advisory email list, which the city used to send out information about news and events that the city was holding. And so let me let me stop you right there and ask the following question. As I understand it from the record, the city discontinued that that list, and albeit it was close in time or shortly after Ms. Thomas filed her lawsuit. But notwithstanding, the city has discontinued the They said they're not going to resume that list. So if we were to find that this case is is not moot by the city's actions, what relief would we provide or could we provide Ms. Thomas on a remand to the district court? Yes, the test that the Supreme Court has established for this these exact sorts of situations is a stringent two-part test. And if it is not met by the city, then that is a finding that there's a live case or controversy, and that declaratory and injunctive relief are available to a party like Ms. Thomas. In addition, Rule 54C does provide that final judgment should be granted the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings. So what would we be enjoining, if I may ask? Enjoining future use of a advisory email advisory list or a declaratory judgment that the city itself did, in fact, infringe on Ms. Thomas's news gathering rights under the First Amendment, as well as her due process rights for removal from that list. That's the purpose. But how would we draw up an injunction like that? You know, there's so many different things that can change that might somehow make the injunction move. How would we do that to make it all-encompassing for the future? It could enjoin future use of a similar email list that purposefully excludes individuals gathering news in retaliation for their news gathering. It also, again, although injunctive relief is just one of the forms of relief, declaratory relief is also available. And a year ago today, the U.S. Supreme Court discussed whether or not in a case that came to them, and it's the New York State Rifle and Pistol Association versus the City of New York case, 140 Supreme Court 1525. The U.S. Supreme Court actually found that even in a case where the only thing that was pled was a request for declaratory and injunctive relief, and damages were not even discussed until the case had gotten to the Supreme Court. On remand, they instructed the Court of Appeals and the District Court to address whether or not damages were possible under essentially a catch-all provision. And we similarly pled a catch-all. We requested in addition to specific declaratory and injunctive relief that the Court provide other relief it deems just and proper. As I mentioned, Rule 54C does have that specific provision that even if the party has not demanded the relief in its pleadings, can be awarded. And that's an issue that Justice Alito in his dissent at footnote five, page 1535 in the New York State Rifle, discusses how lower courts have affirmed that federal rule civil procedure 54C means what it says. Relief in damages is not foreclosed by plaintiff's failure to ask for damages in the prayer. So that is a possibility on remand. But again, the stringent two-part test that the Supreme Court has used in this particular context is one that's designed to there is a live case or controversy under the U.S. Constitution. Is there a reason damages could not have been pled when the complaint was filed in this case? The focus of, not necessarily, Your Honor. If there were damages at the time, I assume they could have been pled, but the choice was made not to. And I mean, I can see the court almost using its equitable powers to say, yes, you're entitled to other relief, but you'd have to consider equitable factors as to why they weren't demanded before. And here, I don't see any good reason why they weren't. If they're actually, if your client had damages, why she didn't request it. The focus was trying to get her on the purpose. And this court did say in the Morrison v. Board of Education of Boyd County case, 521 Fed Third 602 at 611 in 2008, that allowing the plaintiff in that case to proceed to determine the constitutionality of an abandoned policy in the hope of awarding the plaintiff a single dollar indicates no interest and trivializes the important business of the federal courts. I mean, that is somewhat of a shock. You said the focus was to get the city to change the policy. It appears that you were successful, that they did change their policy. Why do you think that there's a reasonable likelihood that they would go back to the former policy? Is that anything more than just speculation and conjecture? No, it's not, Your Honor. The courts, including this court, but as well as we've cited the cases from the 9th and 11th Circuit, dive deeper than just whether or not the policy was changed. They look at things like whether there was a well-reasoned justification for the change, which there was not here. There's been no well-reasoned justification, whether or not there was rationale, whether or not it was done in secret, which it was here. And at the heart of the district court's decision was a degree of solicitude or deference to the city only had to, under the district court's ruling, change the policy and assure the court that it would not do the same. We've argued that that level of solicitude is inconsistent with the U.S. Supreme Court's decision in Trinity Lutheran Church v. Comer that was issued in 2017. So isn't this policy a more transparent, I guess, an equitable policy than the other was? Because here it requires not the city to do any more than put the information on the website, and it's sort of an all-com kind of thing. So isn't that more transparent than the other policy? So I guess that brings a question to my mind. Why wouldn't that be a more favorable position to everybody and even to the city? So what would make us think that the city would revert to some other, you know, nefarious policy that might pick and choose who could get the information? We don't know what they would do. We did request discovery. That request for discovery was denied to see how the policy was being implemented. So we simply don't know if the city is still using an email list of other sorts for... You said that this policy was done in secret, this new policy was, I mean, occurred in secrecy. Is this policy, I mean, was this one developed differently than the procedures for the other one? Was the other one open to public comment and notice or anything like that? There was no written policy related to the email list prior. The previous version of the media relations policy had no discussion regarding the email list. It was something that the city did. So it was done in secret also, basically. It was, Your Honor. Absolutely. But the secrecy goes to, in many ways, to whether or not the decision was legislatively. That is a key inquiry under SLISL, assuming that any solicitude is due under Trinity Lutheran. If we assume that it was, the court in 2019, this court in 2019, juxtaposed decisions that were ad hoc, easily reversible, and discretionary versus ones that were legislative-like. Those that were legislative-like got more solicitude than those that were ad hoc and discretionary and easily reversible got minimal solicitude. Right. Another question. Even if the city's process in implementing the new media relations policy was ad hoc within the meaning of speech first, can't we still find that the changes were genuine? And what facts could you point to that would suggest that there is a possibility that the city would revert back to the media advisory list? Because that's the potential harm you have asserted. Yes. And what the courts have looked to is this test to decide whether or not, based upon the totality of the circumstances. We don't have a smoking gun. I'll be the first one to tell you that. There is no smoking gun in the record that says that this was, as in the city of Mesquite case, that's also discussed in this court's Kentucky right to life decision. There's no smoking gun that says the city is planning on reverting back. What we have here is the circumstances in which the change was made. You have the timing, you have the lack of transparency, and the city's reservation of right to change its policies at any time without notice. And you also have here a failure by the city to address in any way the second prong of the voluntary cessation test. There's nothing the city has done to show that interim relief for events have completely and irrevocably eradicated the effects of the alleged violation. That's an important piece of the test. It's crucial under the Los Angeles County v. Davis decision from the U.S. Supreme Court. And this court in Hewstead, A. Philip Randolph Institute v. Hewstead, did find that in that case where there was a change in a form that was being challenged as illegal, the court said that the change in form did nothing to eradicate the effects of the prior invalid form. And similarly, the FICRA case, which is an FBI no-fly list case, found that with absent some sort of acknowledgment that the plaintiff should not have been on the FBI no-fly list, that also did not meet the second prong of the test. And what I'd like to leave the court with is a quote from Justice Scalia, if I may, in my last 15 seconds from Laidlaw's dissent. The required showing that it is absolutely clear that the conduct could not reasonably be expected to recur is not the mootness, but the heightened showing required in a particular category of cases where we have sensibly concluded that there is reason to be skeptical that cessation of violation means cessation of life controversy. Unless the court has any other questions for me at this time, thank you for your time. Thank you. All right, let's hear from the attorney for the city. Police, the court, my name is Bruce McMullen and I represent the city of Memphis in this case. The issue before the court today is whether the district court properly dismissed Mrs. Thomas's claim against the city of Memphis because there's no longer a live case or controversy to be decided. Ms. Thomas brought this suit because she wanted to be added to the city's media advisory list. She sought only injunctive relief, and I must say today is the first time I've heard anything about monetary damages. It was not brought up in the district court in argument or in brief as it was done in the New York rifle case. Did she seek declaratory relief too along with injunctive relief? Yes, she did seek declaratory relief. Okay, so injunctive and declaratory but not damages. But not damage issues, your honor. Within days after the lawsuit was filed before the city was even served, the city effectuated meaningful action. It would have been simple to add Mrs. Thomas to the list, but as the court has pointed out in its previous questioning, that will open the door for us, the city, to take her off the list. Mr. McMullen, should we be suspicious of the fact that the city implemented the new media relations policy only 13 days after Ms. Thomas filed her lawsuit? Should we be? No, I don't think there's any suspicion around it. First of all, this issue was called to the city's attention, and it's an issue that could possibly affect other media outlets, other digital media outlets, and it was a fix for that entire situation. And so the timing of it, we don't think was suspicious. The timing of it was a situation in which the city wanted to remedy the complaint. How should we interpret Ms. Madden's comments to Ms. Thomas about the concern that she had not been providing favorable coverage of the mayor, and Ms. Madden didn't know why the mayor would ever give Ms. Thomas an interview? I mean, that's not directly related to this point, but how should we evaluate those extremist comments on this issue of timing and motive? Well, those comments were made two years, two or three years prior to the suit being filed. So, you know, in time, I don't see really the relevance of those comments, and I think Ms. Madden said, did not rule out giving her interviews in the future. So that was a specific situation that predated this lawsuit and request to get on the listserv, and we don't think that had any relevance to our actions, to the city's actions. In fact, in May 26, 2020, the city adopted a new media relations policy. It amended and adopted the policy, and that policy is docketed as number 11-3, and that media relations policy put up all media announcements on the website so that any citizen can go and look and see what media events are up, and it also posted these media advisories on the city of Memphis social media platform. The process of adopting this was not done by one person, and it's not a process that can easily be reversed. The city's HR department, which is headed by Alex Smith, had to approve the policy, and the city's chief legal officer at the time was headed by Ms. Jennifer Sink, also approved and signed on to the policy. Then there's the practical aspect. I know it's some concern as to whether they would revert back to the listserv policy, but from a practical matter, the listserv is outdated. It's too difficult to manage. You have to physically put someone's email address. You have to keep up with who wants to be on the listserv, and it's outdated. From a practical matter, the new policy is more efficient. It reaches more people. It's easier to manage for the city, and there's no practical reason to ever return to that policy. Would those be factors that the city would advance the insatisfaction of the speech-first requirements to show that there's little likelihood that the city would revert back to the old policy? Absolutely. Two things. A government, as the court knows, is given solicitude for its actions versus a private entity. When the government does it and does it publicly, speech-first talks about the fact that the government, quite frankly, had more credibility because I believe they're more accountable to the citizens. Those would be factors that would, whether the court finds that or not. The city did it on an ad hoc basis in which we don't think that was the situation. We produced a document. We did it in a legislative-like manner and produced the document, and we posted it. We made a public notice, and that's docket number 11-5, posted a notice to all the citizens that this is our new policy. But I think under the speech-first, when you look at factors, when you take totality of the circumstances of the voluntary cessation, when you look at the totality of the circumstances and analyze whether we revert back to that process, you'll see, first of all, technologically, it's impractical. It makes no sense. It's outdated. It's like bringing an injunction to police having horse and buggy. Now they have police cars. They're never going to go back to horse and buggies again. And it's an ineffective manner. So from a practical standpoint, there's no chance going back. From a legislative standpoint, it's not something that can easily be flipped back. It is a personnel policy that's posted, and it went through the same process that all other personnel policies post. And also, in that personnel policy, it has teeth. If you look at the last part of it, it's employees who violate this personnel policy, meaning if somebody tries to create a listserv advising media outlet, they'll be subject to disciplinary action. So not only was this a legislative type of remedy, it has teeth in it. And to return to the old system, it would not only be difficult in line with the policy, it would be impractical from where we are with technology and the city's to disseminate as much information to as many people as possible. All right, Mr. McMillan. Thank you. Any further questions? Judge Sir Heinrich. Judge. All right. Thank you for your argument. Uh, Mr. McAdoo, you've got three minutes rebuttal. Thank you, Your Honor. I'd like to pick up where Mr McMillan left off. The city's policy does not include, and this is page 120 of the record, the new policy says media advisories from the mayor's communications office regarding news briefings, news conferences, and written statements will be posted on the city of Memphis website and designated city social media platforms. There's nothing in the policy that bars use of the email list. There's also nothing in the record regarding technologically outdatedness of the email list. And while it is true that the violations of the policy itself can be, uh, lead to an employee being subject to discipline, very again, it's nothing that bars use of an email list. It just simply says these emails, these advisories are going to be sent out now using a different process or on these particular processes, the website and on social media. The timing is very relevant. Schlissel talks about that decision from this, uh, this month from this court talks about the timing matters and unlike a case relied upon by the city, Hammerhand, there is no showing that the city has been considering a change for a long time. And the analogy that Mr. McMillan uses is an interesting one. The police may not use horse and buggies anymore, but a lot of police departments do use horses, despite the fact that cars are available. And that's not to say then that emails couldn't be, continue to be used in a viable way to communicate with journalists and it's hardly onerous to add someone to an email list. Finally, maybe finally, um, the Trinity Lutheran case is not one that this court has grappled with. What's it, what is its impact on this court's decisions regarding executive branch cessation of challenge actions? And there was no finding of solicitude in the majority opinion in Trinity Lutheran. And it in so doing it undercuts this court's prior jurisprudence on this issue. But even if that's not the case, the city has not shown any way that it's legislative. Like it was not public. It was a decision made by two members of the mayor's leadership team and then promulgated to the public without any sort of rationale. And finally, the city has made no showing whatsoever that they have satisfied the second prong of the voluntary cessation test. Mr. McAdoo, under these facts, in order to meet the legislative prong, what would the city have had to do? Are you saying that they would have had to formulate a policy, put it and actually have it go before the city council? Not necessarily. Okay, so what would they have had to do? They did the minimum of what they had to do here, two signatures. They could have done what other regulatory agencies do at times, like the federal government, notice and comment periods. They could have held public meetings to discuss the change, or they could have also opened things up to public comment and provided an opportunity for the public to hear the rationale behind their decision. They didn't do that. So when you say they did the minimum, are you conceding that they met the floor? I'm saying they did the minimum that's required under their policies, Your Honor. They say that they had to get two written approvals. They have a declaration in from the city attorney and they did that. But that's the only thing that was required of them to make this policy change. There can be a vast, vast chasm between the floor and the ceiling. And I hear you saying, okay, they did the bare minimum. So they met the floor, but they did nothing more than that. And what I'm saying, to be clear, they met the floor, what they had to do. They didn't meet the floor of what is, should be entitled to any amount of more than the minimum solicitude on their solicit. It's still an easily reversible, discretionary decision that can be changed at any time. And the city itself actually, in its briefing, talks about how the decision was made by the administration. They make a fair amount of hay in the trial court that it was two people that made this decision, but it doesn't, it ignores the fact that these are two people that report directly to the mayor, which is really in essence, a decision of the mayor's office. Thank you. Any further questions, Judge Sir Heinrich, Judge Donna? No. All right. Thank you, counsel, for your argument. Case will be submitted and you may adjourn court. This honorable court is now adjourned.